Leon BENSON, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9910–CR–631.

Supreme Court of Indiana.

Feb. 15, 2002.

J. Richard Kiefer, James J. Bell, Kiefer & McGoff, Indianapolis, IN, Attorneys for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice

The defendant, Leon Benson, was convicted of murder [1] and carrying a handgun without a license,[2] a class A misdemeanor, for the 1998 death of Kasey Schoen, who was shot in the early morning hours while sitting in his parked truck on an Indianapolis street. In this appeal, the defendant challenges the trial court's actions in permitting the State to confront its own witness with unsubstantiated allegations, in excluding testimony of the defendant's investigator, and in directly questioning a witness in a manner favoring the State. The defendant also alleges prosecutorial misconduct as fundamental error for the prosecutor's pattern of challenging the defendant's witnesses with prejudicial unsupported accusations.

The State's key witness, a morning newspaper delivery person, testified that, as she was working her route between 2:30 and 4:00 a.m., she stopped her vehicle to place newspapers in a sidewalk vending box. Ahead of her and illuminated by her headlights she saw a black Dodge Ram truck parked with its driver talking to a man standing on the sidewalk. As she walked around the front of her vehicle, she heard two or three gunshots from the direction of the truck and looked in its direction, observing the man who had been standing on the sidewalk now walking in her direction. She then observed the man turn and walk back to the truck and fire two more shots into it. She could see the flash coming off the end of the gun in the

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–47–2–1.

man's hand. She got into her vehicle, tried to call 911 on her cell telephone, and drove ahead, passing the parked truck and seeing a man slumped over in the seat. As she drove by, the man who fired the shots was walking on the sidewalk and looked at the witness, making eye contact with her, after which he ran into a parking lot. The witness made an in-court identification of the defendant as the man who fired the shots.

### Impeachment by Unsubstantiated Allegations

 The defendant first contends that the trial court abused its discretion in allowing the State to confront its own witness with the suggestion that his reluctance to testify was due to threats received while the witness was incarcerated.

One of the State's witnesses testified that at the time of the shooting he was in a nearby upstairs apartment, that he heard several gunshots, and that he looked out the window at the crime scene. When asked where he observed the defendant located at that time, the witness stated, "I'm not exactly for sure.... I don't know for sure." Record at 206.

At the time of his testimony, the witness was incarcerated in the Marion County Jail for violation of parole on a robbery conviction. When the witness expressed uncertainty as to the defendant's location with respect to the victim's truck, the State was permitted, over defense objection, to ask a series of questions implying that the witness was feigning memory loss out of fear of retribution from fellow jail inmates. The prosecutor's questions included: "How many people are in your cell block right now?"; "Do you want them to know whether or not you're a witness?"; "Do you want the people in your cell block to know what you're doing right now?"; "[W]hat might they do if they found out?"; and "Would it be fair to say that inmates who have testified for the State aren't the most popular members of the Marion County Jail?" Record at 211–13.

At the conclusion of the State's direct examination of the witness, it introduced in evidence a transcript of the witness's recorded interview with police shortly after the crime. In the statement, the witness told police that, while looking out of a second story apartment window, he observed the defendant approach the truck. The witness turned away from the window, but then heard four of five shots and looked out the window again, observing the defendant walking away from the truck.

Over objection, the trial court also permitted the State to present the testimony of a police detective that testifying inmates in some cases are subjected to abuse and physical assault by other inmates.

The defendant argues that there was no evidence of threats to the witness and no evidence that the defendant, who was also incarcerated in the same jail, even knew that the witness was also incarcerated there. Citing *Cox v. State*, 422 N.E.2d 357 (Ind.Ct.App.1981), the defendant argues that the State's questioning constituted an extremely prejudicial evidentiary harpoon that requires reversal and a new trial.

In *Cox*, the State on direct examination elicited testimony of threats made against a witness's life if he testified in the case. 422 N.E.2d at 361. Noting the absence of any evidence suggesting that Cox was responsible for or had knowledge of the threats, the Court of Appeals found "the improper admission of such highly prejudicial testimony [to be] reversible error." *Id.* at 361. A principal concern in *Cox* was that such threats "tend to show guilty knowledge or an admission of guilt" on the part of the defendant, thus requiring a proper foundational showing that the threats "were made either by the defen-

dant or with his or her knowledge or authorization." *Id.* at 361–62. *Cox* emphasized that evidence of threats made by *unidentified* third persons usually lacks a sufficient connection to the defendant to be admissible. *Id.* at 362. Noting that testimony regarding threats not attributable to a defendant may be intended only to show "some unwritten prison code among inmates which places in physical peril any inmate who acts as a prosecution witness," the *Cox* court observed that, even if the jury were instructed to narrowly construe the threats, "we believe such an instruction could not have cured the error." *Id.* at 361.

In the present case, there is no evidence that the witness received *any* threats whatsoever, which makes the State's trial strategy particularly questionable. The prosecutor's questions and evidence encouraged the jury to unfairly speculate, without any evidentiary support or foundation, that any unfavorable aspects of the witness's testimony were attributable to his fear of inmate retribution. To condone this trial tactic would put at risk the credibility of every witness who testifies during incarceration. Any party seeking to discredit such a witness would thus be able, without substantiation, to unfairly imply to a jury that the witness was being less than truthful.

The Indiana Rules of Professional Conduct demand that "a lawyer shall not ... in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence." Ind.Professional Conduct Rule 3.4(e). Indiana courts have emphasized the impropriety of this trial tactic. *See, e.g., Haynes v. State,* 411 N.E.2d 659, 665 (Ind.Ct.App.1980)("Improper matters cannot be introduced into the awareness of the trier of fact by formulating a question that is pregnant with

an unsubstantiated assertion of fact."); *Lowe v. State,* 260 Ind. 610, 613, 298 N.E.2d 421, 423 (1973)("An attorney should not contrive a cross-examination based on fictitious assumptions when to do so would only confuse the fact finder and impede the search for truth.").

■ In the present case, the prosecutor's questions and evidence did not directly allege that the witness was fearful due to threats connected to the defendant, but did clearly imply, without any substantiating foundation in the record, that the witness's trial testimony was untruthful due to his fear of retribution. Although the trial courts generally have inherent discretionary power as to the admission of evidence, and its decisions are reviewed only for an abuse of that discretion, *Rubalcada v. State,* 731 N.E.2d 1015, 1023 (Ind.2000); *Brewer v. State,* 562 N.E.2d 22, 25 (Ind. 1990); *Oglesby v. State,* 515 N.E.2d 1082, 1085 (Ind.1987), we cannot approve of the questioning permitted here.

■ To constitute grounds for reversal, however, an error in the admission of evidence must be "inconsistent with substantial justice." Ind.Trial Rule 61. A reviewing court must disregard any error "which does not affect the substantial rights of the parties." *Id.* Errors arising from a prosecutor's attempts to impeach a witness by asserting unsubstantiated collateral matters are subject to a harmless error analysis. *Grayson v. State,* 593 N.E.2d 1200, 1205 (Ind.Ct.App.1992).

The defendant argues that the prosecutor's improper questioning unfairly affected the witness's credibility and falsely implied that the defendant was connected to threats because the defendant was also an inmate of the Marion County Jail.

We agree that the State's improper questions bolstered the credibility of the witness's prior statement and undermined

the credibility of his trial testimony. Arguably, this would have enhanced the witness's prior statements that he saw the defendant standing by the victim's truck before and after the shots were fired. These evidentiary facts, however, are relatively unimportant in comparison to the newspaper delivery person's detailed testimony describing her direct observation of the crime. We conclude that any resulting improper impairment of the incarcerated witness's testimony was not of substantial importance to the jury's determination of guilt.

As to the possibility that the jury connected the defendant with the threats implied by the State, we find this to be highly unlikely. Even the State's improper questions did not suggest that the witness had received any specific threat—only that he might be apprehensive about retribution from his fellow inmates. We find no reasonable possibility that the jury may have attributed this potential retribution to the defendant.

We decline to order a new trial because of the State's improper questions and evidence. We hold that these tactics did not affect the defendant's substantial rights and were not inconsistent with substantial justice. *See* Ind.Trial Rule 61.

### Limitation of Testimony

 The defendant next contends that the trial court erred in limiting the testimony of James Hendrix, a defense investigator called to testify regarding physical aspects of the area where the crime occurred. He stated that he had reviewed the case file and the police video of the crime scene and that he visited the crime scene on three occasions. His most recent examination of the scene was after dark, about 9:00 p.m., on July 7, 1999, about one year after the August 8, 1998, murder. When the defense attempted to elicit his testimony regarding the visibility between the point where the victim's truck had been parked and the points where the State's two eyewitnesses had been located, the trial court sustained the State's objections.

Challenging the exclusion of the testimony, the defendant argues that it was relevant and based on personal knowledge, or, in the alternative, admissible as a lay opinion pursuant to Indiana Evidence Rule 701.

The first of these two challenged rulings occurred during the defendant's direct examination of Hendrix, as follows:

[Defense counsel]: Did you also conduct any experiments standing at the newspaper box looking at the point at the end where the pickup truck was parked in the police video, and have a person stand there?

[Hendrix]: Yes, I did.

[Prosecutor]: I object, your Honor.

The Court: What is the objection?

[Prosecutor]: Can we approach?

(Side bar colloquy out of hearing of jury)

[Defense counsel]: Stood at the newspaper box. Looked to the rear of the truck and whether he was able to recognize somebody's features.

The Court: Response. . . .

[Prosecutor]: He's not [the newspaper delivery person]. This is being proffered to the jury as expert testimony and you can't see (inaudible).

The Court: Well, he's not an expert.

[Defense counsel]: But—did he see it or not. Was he able to see it.

The Court: I'm going to sustain the objection. There's nothing—it's at nine o'clock at night. It's not at the same time as this. We don't have anybody in any headlights. You

know—it's not the same—so I'll sustain the objection.

Record at 405.

■ A trial court ruling excluding evidence may not be challenged on appeal "unless a substantial right of the party is affected" and the substance of the evidence was made known by an offer of proof or apparent from the context. Ind.Evidence Rule 103. Here, there was no separate offer of proof, and the context does not enable us to know what the witness would have testified had the objection been overruled. We thus have no basis to determine whether the ruling sustaining the State's objection affected a substantial right of the defendant. We decline to find error on this claim.

The defendant's second assertion of improper exclusion of Hendrix's testimony relates to his testimony regarding the view from the second floor of the apartment building ·from which one of the State's eyewitnesses saw the defendant at the victim's truck.

[Defense counsel]: Did you go into the St. Regis Apartments?

[Hendrix]: Yes sir.

[Defense counsel]: Did you see the location of the apartments of 207 and 208?

[Hendrix]: Yes I did.

[Defense counsel]: All right.

[Hendrix]: In looking—during the day at—from the rear end of the truck from 207—I could not see the front end of the truck—okay. And when I went back in the early evening, it would almost be impossible to see the truck from those two locations.

[Prosecutor]: I object, your Honor, to the conclusion.

The Court: I'll sustain the objection.

[Prosecutor]: I ask that it be stricken from the record and that the jury be asked to disregard.

The Court: The Court will admonish the jury that you're to disregard the last response given by the witness and give it no consideration in your deliberations of this case.

Record at 407–08.

On appeal from the exclusion of evidence, our review is not limited to the grounds stated at trial, and the ruling will be upheld if supported by any valid basis. *Feliciano v. State*, 477 N.E.2d 86, 88 (Ind. 1985); *Moritz v. State*, 465 N.E.2d 748, 755 (Ind.App.1984). Arguing that Hendrix's perception of the crime scene occurred from an adjacent apartment, on a different day, and under different conditions, the State argues that the testimony was properly excluded because it was not relevant and not helpful to the determination of a fact in issue.

It is not relevant that Hendrix's observations were made on a day different from that of the crime. The excluded testimony concerns the line of sight visibility of the murder scene from the second story of the same apartment building from which the State's eyewitness viewed the incident. The possibility of different conditions, however, is relevant to the trial court's decision. At the time of the trial court's ruling, the defendant had not established a foundation showing that there had been no substantial changes in the trees, signage, or other possible obstructions to vision. Similarly, there had been no foundation showing that view afforded by the apartment from which Hendrix conducted his observations was materially helpful to evaluate the view from which the State's witness saw the crime scene.

Because these potential disparities remained, we decline to find that the trial court abused its discretion in excluding Hendrix's testimony regarding his observations from the second story apartment.

**Judge's Reading of Question from Jury**

 At trial, a juror inquired of the court whether the jury can ask questions. The judge responded that any juror who has a question may submit it in writing to the trial judge, who would consult with the parties' counsel and determine whether the question is appropriate under the rules of evidence.[3] While submitting a series of questions propounded by the juror, the trial judge, apparently inadvertently, slightly rephrased a juror's question. The defendant claims that the particular nature of this mistake violated his federal constitutional rights to the presumption of innocence and due process of law and the Indiana constitutional right of the jury to determine the law and the facts.[4]

The juror presented a compound question: "Did [the witness] make an eye contact with the shooter as she drove south on Pennsylvania?" and "Did he start to run?" and "And if so, was he in the light?" Record at 180. The judge presented these questions to the witness in the following colloquy:

> [Judge]: Okay, did you make eye contact with the shooter as you drove south on Pennsylvania Street?
>
> [Witness]: Yes, ma'am.
>
> [Judge]: Did the *defendant* then start to run?
>
> [Witness]: Yes.
>
> [Judge]: Was he in the light?
>
> [Witness]: He was in the headlights of the victim's truck.

Record at 181–82 (emphasis added). Although the judge used the word "defendant" instead of "shooter" or "he" as pre-

sented by the juror, the defendant did not lodge any objection.

 As a general rule, the failure to object at trial results in a waiver of the issue on appeal. *Mitchell v. State,* 726 N.E.2d 1228, 1235 (Ind.2000). On rare occasion, Indiana appellate courts have addressed claims challenging a judge's trial comments absent a contemporaneous objection during trial. *Id.* at 1235. This exception to the waiver rule will apply only if the claimed error satisfies our extremely narrow fundamental error exception. *Id.* at 1235–36.

> To qualify as fundamental error, "an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Willey v. State,* 712 N.E.2d 434, 444–45 (Ind.1999) (citations omitted). To be fundamental error, the error "must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Wilson v. State,* 514 N.E.2d 282, 284 (Ind.1987). *See also Ford v. State,* 704 N.E.2d 457, 461 (Ind.1998)("This Court views the fundamental error exception to the waiver rule as an extremely narrow one, available only 'when the record reveals clearly blatant violations of basic and elementary principles [of due process], and the harm or potential for harm [can-]not be denied.' ") (quoting *Warriner v. State,* 435 N.E.2d 562, 563 (Ind.1982)).

*Mitchell,* 726 N.E.2d at 1236 (Ind.2000).

Under the circumstances presented, the claimed error is not fundamental, and pro-

---

**3.** Pursuant to Indiana Evidence Rule 614(d), "[a] juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the questions to the witness to answer." The rule requires that before submis-

sion of the questions to the witness, the trial court must determine appropriateness and rule upon any objections.

**4.** IND. CONST. art. 1, § 19.

cedural default bars further consideration of the issue.

### Prosecutorial Misconduct

 The defendant contends that the prosecutor committed misconduct by injecting several evidentiary harpoons into the proceedings when he discredited witnesses with prejudicial accusations that were unsubstantiated in the record. This objection, however, was not presented at trial as to any of the alleged instances of prejudicial misconduct.

A claim of prosecutorial misconduct is waived if there is no contemporaneous objection. *Johnson v. State*, 725 N.E.2d 864, 867 (Ind.2000); *Stevens v. State*, 691 N.E.2d 412, 420 (Ind.1997). The defendant attempts to avoid waiver by asserting fundamental error. Under the circumstances presented in this case, the alleged violations do not make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process, nor do they present an undeniable and substantial potential for harm. *See Mitchell*, 726 N.E.2d at 1236; *Willey*, 712 N.E.2d at 444–45; *Ford*, 704 N.E.2d at 461; *Wilson*, 514 N.E.2d at 284. Procedural default bars further appellate consideration of this claim.

### Conclusion

The defendant's convictions and sentence are affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.