**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DONALD E.C. LEICHT**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ARBIE CLAY, JR., | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )   No.  34A02-1202-CR-156 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Lynn Murray, Judge
Cause No. 34C01-1108-FB-139

**August 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Arbie Clay, Jr. ("Clay") appeals his conviction in the Howard Circuit Court for Robbery, as a Class C felony.[1]  We affirm.

**Issues**

Clay presents two issues for our review, which we restate as:

I.    Whether there was sufficient evidence to support the conviction; and

II.   Whether the State committed prosecutorial misconduct, thus depriving Clay of a fair trial.

**Facts and Procedural History**

On August 16, 2011, at around 7:20 p.m., an individual who would later be identified as Clay entered a Low Bob's Tobacco Store ("the store") while the on-duty clerk, Tracy Sturgell ("Sturgell"), was in the store's office changing out store surveillance video tapes. Sturgell saw Clay enter the store on a video monitor and, thinking Clay was a customer, left the back room to work the storefront.

When Sturgell emerged from the office to the area behind the store counter and cash register, she was not able to see Clay.  She quickly felt something sharp pressed against her left lower back, and from behind Clay told her to open the cash register, yelling instructions not to look at him and to hurry up.  Sturgell had difficulty opening the register because she was nervous, and she again felt a sharp object pressed against her back.

Sturgell eventually was able to open the register.  Once she did, Clay emptied the register of its bills and dropped the register's cash drawer on the floor of the store.  While

---

[1] Ind. Code § 35-42-5-1(1).

Clay was emptying the cash register, Sturgell turned sideways to get out of the way of the register drawer and saw Clay's face. As Clay left, Sturgell attempted to see where he went; she then returned inside the store, called 9-1-1, and locked the store to wait for police to arrive.

Among the officers who responded to the 9-1-1 call was Kokomo Police Department Detective Chad Rodgers ("Detective Rodgers"). After paramedics treated a minor wound Sturgell had received from the sharp object Clay used in the robbery, Detective Rodgers and Sturgell traveled to the police station and Sturgell gave a statement concerning the night's events. Sturgell described the robber as a black male, aged between fifty and sixty years, with no facial hair and bad teeth. Based upon this description, Detective Rodgers composed a photographic array for Sturgell to view, and Sturgell identified Clay as the robber from the array.

Based upon Sturgell's identification of Clay, Detective Rodgers provided photographs to the midnight shift of Kokomo police officers. One of these officers, Ty Solomon ("Officer Solomon"), observed an individual matching Clay's description riding a bicycle at around 11:30 p.m. that night. Officer Solomon stopped Clay and asked for his name and birthdate. Clay did not identify himself by his proper name and answered with enough hesitation to prompt Officer Solomon to contact Detective Rodgers, who came to the scene. Upon arriving, Detective Rodgers exited his car and addressed Clay by name; Clay briefly nodded his head and slumped his shoulders, and was arrested.

On August 22, 2011, Clay was charged with two counts of Armed Robbery, each as

3

Class B felonies.  A jury trial was conducted on January 10 and 11, 2012.  At its conclusion, the jury found Clay not guilty as to one count of Robbery, and guilty as to the second count of Robbery, as a Class C felony.  On February 8, 2012, the trial court entered judgment of conviction and sentenced Clay to eight years imprisonment.

This appeal followed.

**Discussion and Decision**

Sufficiency of the Evidence

Clay challenges his conviction, arguing first that the State failed to produce sufficient evidence of his guilt.

Our standard of review for challenges to the sufficiency of the evidence is well settled.  We consider only the probative evidence and reasonable inferences supporting the verdict.  Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh evidence.  Id.  We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt."  Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)).  "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict."  Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

Here, Clay was convicted of Robbery, as a Class C felony.  To obtain a conviction, the State was required to prove beyond a reasonable doubt that Clay knowingly or intentionally took property from another person or from the presence of another person by using or threatening the use of force.  I.C. § 35-42-5-1(1).

4

On appeal, Clay argues that the State failed to produce sufficient evidence of his identity as the perpetrator of the armed robbery on August 16, 2011. In making this argument, Clay draws our attention to differing accounts of his physical characteristics, and compares these accounts to each other and to a photograph taken of him at the time of his arrest. Yet at trial, Sturgell identified Clay as the individual who robbed the store. This testimony corroborated her identification of Clay from a photographic array composed by Detective Rodgers the evening of the robbery. Sturgell also clarified her description of Clay as having "bad teeth," testifying that she meant "that something stood out that I noticed, maybe they were shifted or not bad as in rotting that's not--, what I'm talking about something different" (Tr. at 183), and "[w]hen I say bad teeth it's something that made it stand out to me." (Tr. at 184.)

Thus, to the extent Clay contends that he was misidentified based upon Sturgell's description of his teeth or facial hair, we decline his invitation to reweigh the evidence supporting the verdict. See Drane, 867 N.E.2d at 146. We therefore conclude there was sufficient evidence to support Clay's conviction of Robbery, as a Class C felony.

Prosecutorial Misconduct

Clay raises a second issue challenging his conviction, namely, that the State engaged in prosecutorial misconduct during closing argument, and that he is therefore entitled to a reversal of his conviction.

When reviewing a claim of prosecutorial misconduct, we determine whether the prosecutor engaged in misconduct and, if so, whether the misconduct placed the defendant in

5

a position of grave peril to which he would not otherwise have been subjected. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002). Whether the defendant has been placed in grave peril is measured by the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of impropriety of the conduct itself. Id.

Where, as here, defendant did not object at trial to the alleged misconduct, a defendant must not only demonstrate prosecutorial misconduct, but also must establish that the misconduct rises to the level of fundamental error. Id. Fundamental error is an "extremely narrow exception that allows a defendant to avoid waiver of an issue" and "makes 'a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process … present[ing] an undeniable and substantial potential for harm.'" Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006) (quoting Benson v. State, 762 N.E.2d 748, 756 (Ind. 2002)).

The statement the prosecutor made during closing argument of which Clay now complains is:

> So historically eye witness identifications (inaudible) most crimes are (inaudible) are prosecuted, people are convicted on the basis of what other people saw or heard and if you're going to not believe Ms. Sturgell because she got the color of his shorts wrong or because her definition of bad teeth means discolored or misaligned as opposed to rotting or missing, then the criminal justice system is in a world of trouble because under those circumstances I guess my advice to you would be to board up, lock your doors, board up your windows and keep your kids and grandkids at home because if you can't rely on the testimony of one of your fellow citizens to what they saw or heard, that this system is going to grind to a halt.

(Tr. at 193-94.) Based upon this portion of the State's closing argument, Clay argues that the State "induce[d] the jury to ignore both the presumption of innocence and its obligations to weigh evidence impartially," instead "ask[ing] them to focus on the 'integrity' or

6

'survivability' of the criminal justice system, and the safety of their loved ones." (Appellee's Br. at 7.) This, Clay argues, rose to the level of fundamental error.

Though we agree with Clay that this portion of the State's argument was inappropriate, we cannot conclude that Clay was placed in the grave peril required to obtain a reversal of his conviction. During the trial, inconsistencies in Sturgell's description of Clay's physical characteristics as conveyed to Detective Rodgers were exploited during cross-examination, but the State adduced testimony from both Sturgell and Detective Rodgers that would reasonably allow for the reconciliation of discrepancies. The trial court instructed the jury that its duty was to "reconcile the conflicts" in the evidence "on the theory that each witness has testified to the truth," and that the jurors "should weigh the evidence and give credit to the testimony in light of your own experience and observations to the ordinary affairs of life." (Appellant's App. at 11.) Thus, while the State's argument may have stretched beyond the boundaries of proper considerations for a jury by appealing to the jury's passions, we nevertheless assume the jury properly followed the instruction given by the trial court. Thus, we cannot conclude in this instance that the State's argument placed Clay in grave peril, let alone that the argument had so prejudicial an effect upon Clay's due process rights as to amount to fundamental error.

## Conclusion

The State produced sufficient evidence to sustain Clay's conviction. The State's closing argument did not amount to a deprivation of Clay's due process rights such that any misconduct may have resulted in fundamental error. We therefore affirm Clay's conviction

for Robbery.

Affirmed.

RILEY, J., and CRONE, J., concur.