**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 11 2013, 5:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

YOHAU FLAME,[1]                  )
                                 )
    Appellant-Defendant,         )
                                 )
        vs.                      )     No. 49A02-1302-CR-121
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Charles A. Wiles, Senior Judge
Cause No. 49G03-1109-FA-64634

**September 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

---

[1] Throughout the trial, the appellant was referred to as Vincent Smith.

Yohau Flame ("Flame") was convicted after a jury trial of rape[2] and criminal deviate conduct,[3] each as a Class A felony, two counts of criminal confinement[4] and one count of attempted robbery,[5] each as a Class B felony, and one count of auto theft[6] as a Class D felony. He appeals, contending that the prosecutor committed misconduct during closing remarks that amounted to fundamental error.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In the early morning of September 9, 2011, H.B. was in the parking lot of her apartment complex, loading luggage into her car as she prepared for an upcoming flight. It was dark, and as she loaded the luggage, Flame approached her and pulled out a gun.

Flame placed the gun at the back of her head, pushed her into the backseat of a car he had already stolen, switched on the safety locks, and drove away.

Flame drove to two banks where he unsuccessfully attempted to use H.B.'s debit card at the ATM machines.

Flame then drove H.B. to a secluded, wooded area where he demanded that H.B. take off her clothes. He got on top of her and forced sexual intercourse. Flame also performed oral sex on H.B. and forced her on top of him.

Flame then drove H.B. to the Indianapolis airport where she asked someone to call

[2] *See* Ind. Code § 35-42-4-1.

[3] *See* Ind. Code § 35-42-4-2.

[4] *See* Ind. Code § 35-42-3-3.

[5] *See* Ind. Code §§ 35-41-5-1; 35-42-5-1.

[6] *See* Ind. Code § 35-43-4-2.5.

2

911. When the police arrived, H.B. gave a statement at the airport. She then went to a hospital for an examination, where DNA samples were taken that were later identified as containing Flame's DNA profile. Flame was arrested and a penile swab was taken from him that was identified as containing H.B.'s DNA.

The State charged Flame with rape as a Class A felony, criminal deviate conduct as a Class A felony, two counts of criminal confinement, each as a Class B felony, robbery as a Class B felony, and auto theft as a Class D felony. Flame elected to represent himself pro se, and the court granted his request, while also appointing standby counsel.

At Flame's jury trial, the prosecutor at times during closing argument used the word "you" in place of the word "she" when describing the events, but Flame did not object. At one point, Flame's standby counsel objected to a single line of argument, when the prosecutor stated:

> You're being asked to look at her reaction to things based on how you think you might react. And Ladies and Gentleman, what I'm here to tell you is you don't know. Oh, we think about it. We think if this thing happens to me—the worst case, if this happens to me, this is what I would do, and I'm pretty convinced this is what I would do. We don't know. Unless you've been in that situation, unless you're in that situation—but . . . .

*Tr.* at 730. The judge overruled the objection, determining that the prosecutor was permissibly characterizing the evidence. Flame did not request an admonishment to the jury, and the jury found Flame guilty on all counts. Flame now appeals.

**DISCUSSION AND DECISION**

Flame contends that the trial court erred in overruling his objection to the prosecutor's closing remarks. He further argues that, although he did not object at trial, the prosecutor's other statements constituted fundamental error, warranting a new trial.

Claims of prosecutorial misconduct that have been properly preserved are subject to a two-step review on appeal. *Cain v. State*, 955 N.E.2d 714, 721 (Ind. 2011). We determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Id.* "The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id.* In order to properly preserve a claim of prosecutorial misconduct, a defendant must not only object but must also request the trial court to admonish the jury, and, if the party is not satisfied with the admonishment, then that party should move for a mistrial. *Id.* "Failure to request an admonishment or to move for mistrial results in waiver." *Id.*

Here, because Flame failed to request an admonishment or move for a mistrial, he has not properly preserved his argument of prosecutorial misconduct. Where a claim of prosecutorial misconduct has not been properly preserved, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Id.* (citing *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue, and is appropriate only when an alleged error makes "a fair trial impossible or constitute[s]

4

clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." *Id.* (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).  This exception is available only in egregious circumstances.  *Malloch v. State*, 980 N.E.2d 887, 904 (Ind. Ct. App. 2012) (citing *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010)).

Assuming without deciding that the prosecutor's remarks were made in error, the remarks would not warrant application of our "extremely narrow" fundamental error exception.  *Cain*, 955 N.E.2d at 721.  Indeed, we do not find the requisite "substantial potential for harm."  *Id.*  Flame admits that the evidence the State brought against him was extensive.  *Appellant's Br.* at 13.  In addition to H.B.'s detailed testimony, which Flame himself characterizes as "harrowing," *id.* at 8, the State presented a barrage of evidence implicating Flame, including corroborating surveillance videos, the gun, the hat, and physical DNA.  Flame does not challenge this evidence, but contends that "there can be no confidence in the system if the jury is persuaded to convict, not for the evidence and guilt, but for inflammatory appeals to passion, fear, or anger."  *Id.* at 13.  Here, however, given the substantial weight of the evidence, we find that the probable persuasive effect of the prosecutor's remarks was negligible.  Thus, because the State's actions do not present "an undeniable and substantial potential for unfair harm," a new trial is not warranted.  *Booher*, 773 N.E.2d at 820.

Affirmed.

ROBB, C.J., and RILEY, J., concur.