## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 04 2017, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darren E. Essett,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 4, 2017<br><br>Court of Appeals Case No.<br>49A02-1704-CR-795<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>Trial Court Cause No.<br>49G06-1603-F1-11932 |

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Darren E. Essett was convicted of attempted murder, a Level 1 felony, and found to be a habitual offender. On appeal, Essett argues that the trial court committed fundamental error in the manner in which it responded to a question from the jury during deliberations.

[2] We affirm.

## Facts & Procedural History

[3] In February and March of 2016, Essett sent a number of death threats via text messages to his ex-wife, Sherrill Essett, and engaged in other intimidating behavior toward her, including slashing a tire on her car and telling her he would pay to replace it only if she had sex with him. Essett eventually made plans to have the tire fixed on March 26, 2016. When Essett arrived at Sherrill's apartment, he became angry and accused her of having another man in her apartment. Essett tried to enter Sherrill's apartment, but she refused to let him in. Essett told Sherill, "If I can't have you, ain't nobody going to have you, bitch. You going to die today." *Transcript* at 43. Essett then pulled out a knife or box cutter and cut Sherrill's neck. Sherrill ran into her apartment, and Essett got into his truck and drove away. Fortunately, Essett did not sever Sherrill's carotid artery or jugular vein, but it took over 300 stitches to close her wound.

[4] As a result of these events, the State charged Essett with attempted murder, a Level 1 felony, and filed a habitual offender allegation. A jury trial commenced on February 27, 2017, and at the conclusion of the evidence, the parties agreed

that the jury would be instructed on two lesser-included offenses: Level 3 felony aggravated battery and Level 5 felony battery causing serious bodily injury. The jury was further instructed that "[y]ou must not find the defendant guilty of more than one crime for each count and your verdict must be unanimous." *Appellant's Appendix Vol. 2* at 101.

[5] After jury deliberations began, the following exchange occurred on the record:

> THE COURT: All right. Please be seated. Thank you, lawyers, for getting this done in a timely fashion. I will need your cell phone or text messages numbers in case the jury has any questions. Mr. Essett, the way we will do any questions or things from the jury, is if they have a question I will call the lawyers on a three-way call and I will tell them what the question is and what my purposed [sic] answer is. If everybody agrees on what the answer is, I will send the answer back to [the] jury and then before we take the verdict I will make a record of all of the questions and answers that were given. Now if we don't agree on what the answer is, I will bring everyone, including you, back into court. We will go over the question, the purposed [sic] answer. Both sides will be able to make argument and then I will make the decision as to what goes back. Okay.
>
> [DEFENSE COUNSEL]: That means that if there is a question, I agree with the answer, you won't even know about it. You will be consulted if I don't like the answer. Is that okay?
>
> THE COURT: But you will know about it right before we take the verdict because I will go through all the questions and all of the answers that we agreed to. Okay. [Defense Counsel], anything else?
>
> [DEFENSE COUNSEL]: No, Judge.

*Transcript Vol. 2* at 186-87. The record does not reflect any verbal response from Essett, and he did not ask any questions or object to this procedure.

[6]    During the deliberations, the jury submitted the following question to the trial court: "If we are deadlocked as to [the] first count, can we move to convict of [the] lesser charge or do we have to be unanimous as to acquittal on [the] first charge?" *Appellant's Appendix Vol. 2* at 112. The trial court, following the procedure outlined above, called the prosecuting attorney and defense counsel on a three-way call, and the attorneys agreed that the following written answer would be sent to the jury: "Please review your instructions. Whatever verdict you reach, it must be unanimous." *Id.* When the parties reconvened to hear the jury's verdict, Essett was informed of the jury's question and the court's response, and he raised no objection to the procedures followed. The jury then pronounced its verdict, finding Essett guilty of attempted murder. Essett then waived his right to a jury trial on the habitual offender allegation, and following a bench trial thereon, was adjudicated as such. Essett was ultimately sentenced to a term of forty years, with twenty-six years served in the Department of Correction and the remaining fourteen years served on home detention. Essett now appeals.

### Discussion & Decision

[7]    Essett argues the trial court's response to the jury's question constituted an improper communication with the jury outside his presence. Although Essett's trial counsel agreed to the trial court's response, Essett argues that the trial court

was required to obtain a personal waiver on the record of Essett's right to be present for such communications. Essett acknowledges that he did not object on this basis below and that he must therefore establish fundamental error to prevail on appeal. *See Jewell v. State*, 887 N.E.2d 939, 940 n.1 (Ind. 2008) (explaining that "[t]he fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of an issue on appeal"). Our Supreme Court has described the fundamental error standard as a "daunting" one, applicable only in the most egregious circumstances. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014). "To qualify as fundamental error, 'an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible' and must 'constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.'" *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007) (quoting *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002)). The fundamental error exception is extremely narrow and "reaches only errors that are so blatant that the trial judge should have taken action *sua sponte*." *Id.*

[8]     Essett argues that he had a constitutional and common-law right to be present when the trial court communicated with the jury by providing a written response to its question. Essett argues further that his failure to respond verbally to the trial court's and defense counsel's explanations of the procedure that would be used if the jury had questions did not constitute a valid waiver of

those rights. But even if we accept Essett's argument in this regard, we cannot conclude that fundamental error occurred.

[9] Essett argues that the harm or potential for harm resulting from the trial court's communication with the jury outside his presence is that he was "unable to offer any strategic guidance to his counsel in the decision about the response to the jury's question." *Appellant's Brief* at 17. Essett notes that the question of whether to request instructions on lesser included offenses was an important strategic decision in which he was personally involved, and he argues that his input on the trial court's response to the jury's question relating to lesser-included offenses was therefore critical. He argues further that had he been present, he could have requested the trial court to reread all of the instructions to avoid putting special emphasis on the importance of reaching a unanimous verdict on the lead charge, or he could have asked the court to reread Final Instruction 12, which instructed the jury members that they should try to agree on a verdict and be open to re-examining their own views and changing their minds, but that they should not give up their honest belief only because the other jurors disagree or to end deliberations.

[10] Essett's arguments that he could have asked the trial court to re-read some or all of the final instructions are not particularly convincing in light of the fact that the trial court specifically instructed the jury to review all of the final instructions. Nor are we convinced that the trial court's response was fundamental error because it placed undue emphasis on the necessity of reaching a unanimous verdict on the attempted murder charge. Essett makes

no argument that the response did not accurately restate the final instructions the jury had already been given; indeed, Final Instruction 6 specifically informed the jury that its verdict "must be unanimous." *Appellant's Appendix Vol. 2* at 101. Furthermore, the final instructions also directed the jury to consider all of the instructions together and not to single out any instruction and ignore the others. In sum, Essett has not established that the trial court's communication with the jury outside Essett's presence, but with defense counsel's knowledge and consent, constituted a blatant violation of basic principles making a fair trial impossible. *See Godby v. State*, 736 N.E.2d 252, 257-58(Ind. 2000) (finding no violation of the federal or state constitutional right to be present at all critical stages of trial where a juror was privately interviewed by the trial court and counsel outside the defendant's presence and when there was no express notation in the record that the defendant was present when the trial court and the attorneys discussed and resolved how to respond to the jury's note advising that they were deadlocked).

[11] Judgment affirmed.

[12] Baker, J. and Bailey, J., concur.