## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 28 2017, 5:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chris Bradberry,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 28, 2017<br><br>Court of Appeals Case No.<br>49A02-1703-CR-580<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese Flowers, Judge<br><br>Trial Court Cause No.<br>49G20-1507-F2-24974 |

**Barnes, Judge.**

# Case Summary

[1] Chris Bradberry appeals his conviction for Level 2 felony dealing in cocaine. We affirm.

# Issues

[2] Bradberry raises two issues, which we restate as:

    I.      whether the trial court committed fundamental error by admitting the cocaine into evidence; and

    II.     whether the evidence is sufficient to sustain his conviction.

# Facts

[3] On July 10, 2015, Indianapolis Metropolitan Police Department ("IMPD") Detective Brian Thorla and his K-9, Hogan, were part of a narcotics interdiction team at an Indianapolis Fed Ex facility. Detective Thorla noticed an incoming parcel from Arizona that was addressed to "Ismail Covington, 3855 Red Mill Place," in Indianapolis. Tr. Vol. III p. 185. Hogan alerted to the presence of drugs in the parcel, and Detective Miguel Roa transported the parcel to a police facility. Detective Thorla obtained a search warrant, and Detective Roa and Detective Paul McDonald opened the parcel. Inside, they found a brick of cocaine covered in plastic wrap. The detectives broke off a smaller piece of the cocaine, rewrapped it, and resealed it in the parcel with a GPS device and a parcel wire. The detectives retained the larger portion as evidence.

[4] Detective Thorla obtained a search warrant for 3855 Red Mill Place, and a police officer dressed as a Fed Ex delivery person delivered the parcel to the porch, knocked on the door, and walked away. Bradberry opened the apartment door, retrieved the package, and went back inside. A woman then left the apartment and drove to a nearby gas station, where she parked and looked around but did not get out of the vehicle. After ten to fifteen minutes, she drove back to the apartment. After she went back inside, Bradberry came outside and retrieved a blue Nike backpack from another vehicle. He then went back into the apartment.

[5] The officers made a forcible entry into the apartment to execute the search warrant. Officers found Bradberry, a woman, and several children. The unopened parcel was discovered inside of the blue Nike backpack in the attic. The backpack also contained a boxed electronic scale and a roll of plastic wrapping. Underneath the backpack, officers found a Glock handgun. The parcel's shipping label had been ripped off and was found in a trash can in the apartment. Officers also discovered an automated paper money counter and mail addressed to Bradberry at 3855 Red Mill Place.

[6] The State charged Bradberry with Level 2 felony dealing in cocaine and Level 3 felony possession of cocaine. Bradberry's telephone calls from the jail were recorded, including a call to his girlfriend, Nica, and they were admitted at trial. A jury found Bradberry guilty as charged. The trial court entered judgment of conviction and sentenced Bradberry only for the Level 2 felony dealing in cocaine conviction. The trial court sentenced him to 17.5 years with 7.5 years

suspended and ten years executed. The trial court ordered him to serve eight of the executed years in the Department of Correction and two years in a community corrections program. Bradberry now appeals.

# Analysis

## I. Admission of Evidence

Bradberry argues that the trial court committed fundamental error by admitting the cocaine into evidence. His argument specifically relates to State's Exhibit 5, which was the smaller portion of cocaine, and State's Exhibit 6, which was the larger portion of cocaine. Bradberry contends that the State failed to demonstrate a proper chain of custody for the exhibits from the time the cocaine was seized until it reached the lab.

"The purpose of requiring a continuous chain of custody from seizure to admission at trial is to lay a proper foundation connecting the evidence with the accused and to negate any substantial likelihood of tampering, loss, substitution, or mistake." *Young v. State*, 508 N.E.2d 24, 26 (Ind. 1987).

> The State bears a higher burden to establish the chain of custody of "fungible" evidence, such as blood and hair samples, whose appearance is indistinguishable to the naked eye. To establish a proper chain of custody, the State must give reasonable assurances that the evidence remained in an undisturbed condition. However, the State need not establish a perfect chain of custody, and once the State "strongly suggests" the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to admissibility. Moreover, there is a presumption of regularity in the handling of evidence by officers, and there is a presumption that officers exercise due care in

> handling their duties. To mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with.

*Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002) (internal citations omitted).

[9] Bradberry, however, failed to object to the admission of State's Exhibit 5 or State's Exhibit 6. Where a defendant fails to object at trial, the chain of custody argument is waived unless the admission constitutes fundamental error. *Id.* "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to 'make a fair trial impossible.'" *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)). "In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury . . . to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible." *Id.*

[10] Detective Roa testified that he collected the smaller piece of cocaine (State's Exhibit 5) and that he signed his name on it. He also testified that it had a label "printed off by the Marion County Forensic Laboratory after we admit our narcotics for evidence, into the narcotics vault, IMPD Property Room." Tr. Vol. III p. 187. Detective Roa testified that State's Exhibit 6 was the heat-sealed evidence bag containing the rest of the cocaine. He testified that he

placed the cocaine in the heat-sealed bag and that it had his initials on it "from when [he] recovered it." *Id.* at 188. He further testified that the case number from this case was written on the envelope and that the package was in the same or substantially same condition as when he recovered it and submitted it to the drug lab. Detective Gregory Scott testified that Detective Roa collected the evidence and followed "all of the standard protocols for packaging [the evidence], making sure that they are secure, taking them to the IMPD Property Room, and to the lab, and that the chain of custody is complete." *Id.* at 240.

[11] Bradberry contends that the State did not establish a complete and proper chain of custody from the time of seizure to the time of the forensic scientist's examination. However, the State points out that Bradberry's attorney entered into a stipulation regarding the crime lab's report on the cocaine. Bradberry and the State stipulated that the crime lab tested State's Exhibit 5 and State's Exhibit 6 and that the "chunky white substances" were cocaine with a total weight of 713.44 grams. State's Exhibit 11. They also stipulated that the "chain of custody with regards to [the forensic scientist's] examination is complete." *Id.* State's Exhibit 12 was the laboratory examination report that identified the two cocaine specimens, one 530.3 grams and the other 183.14 grams. Bradberry did not object to the admission of State's Exhibit 11 or State's Exhibit 12, and he does not challenge the admission of those exhibits on appeal.

[12] In his reply brief, Bradberry argues that the stipulation relates only to the forensic scientist's examination and that the relevant question "concerns the chain of custody prior to [the forensic scientist's] taking the heat sealed bag

from the property room." Appellant's Reply Br. p. 6. Bradberry argues that his conviction was based on "unreliable evidence." *Id.* at 8. Bradberry is merely raising the possibility of tampering, which is insufficient to overcome the presumption of due care in handling the evidence.[1] *Troxell*, 778 N.E.2d at 814. Although the chain of custody established by the State was not "perfect," any gaps "go to the weight of the evidence and not to admissibility." *Id.*

[13] Moreover, even if State's Exhibit 5 and State's Exhibit 6 were improperly admitted, fundamental error did not occur. Bradberry does not challenge the admission of State's Exhibit 11 (the stipulation) and State's Exhibit 12 (the lab report), which establish that the items were cocaine and determine the weight of the samples. Given Bradberry's failure to challenge this evidence, we cannot say that the admission of State's Exhibit 5 or State's Exhibit 6 had "such an undeniable and substantial effect on the jury's decision that a fair trial was impossible." *Ryan*, 9 N.E.3d at 668.

## II. Sufficiency of the Evidence

[14] Bradberry argues that the evidence is insufficient to sustain his conviction for Level 2 felony dealing in cocaine. In reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We only consider "the evidence

---

[1] Bradberry argues that the descriptions of the exhibits tested by the laboratory do not match the descriptions of the cocaine found in the officers' testimony. For example, Bradberry argues that the detectives did not testify that the box contained multiple Ziploc bags, dryer sheets, or brown specks, which were mentioned in the lab report.

supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* "'It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling.'" *Id.* at 1066-67 (quoting *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005)).

[15] The State alleged that Bradberry "did knowingly or intentionally possess with the intent to deliver cocaine, pure or adulterated, said cocaine having a weight of at least 10 grams." Appellant's App. Vol. II p. 22. Indiana Code Section 35-48-4-1(a) provides: "A person who . . . (2) possesses, with intent to . . . (C) deliver . . . cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; commits dealing in cocaine or a narcotic drug . . . ." The offense is a Level 2 felony if the amount of the drug is at least ten grams. I.C. § 35-48-4-1(e).

[16] On appeal, Bradberry argues that the State failed to prove the intent element. According to Bradberry, there was insufficient evidence to show that he knew the package contained cocaine. In support of his argument, Bradberry argues that *Jernigan v. State*, 612 N.E.2d 609 (Ind. Ct. App. 1993), *trans. denied*, is distinguishable from this case. In *Jernigan*, a suspicious parcel was discovered by officers and was found to contain 205 grams of cocaine. The parcel containing a small amount of the cocaine was delivered to the defendant. The

defendant told the mailman that he had been waiting on the package. Shortly thereafter, the defendant left his residence with the package and drove away quickly. When officers stopped his vehicle, they found the unopened package on the front seat of his vehicle.

[17] On appeal from his conviction for Class A felony possession of cocaine with intent to deliver, the defendant argued that the evidence was insufficient to demonstrate that he knowingly possessed the cocaine. We noted that "[i]n order to convict Jernigan for possession of cocaine with intent to deliver, the State had to prove Jernigan had knowledge of the nature of the substance and its presence." *Jernigan*, 612 N.E.2d at 613. We also noted that "[b]ecause knowledge is a mental state of the actor, the trier of fact must resort to reasonable inferences based on the examination of the surrounding circumstances to reasonably infer its existence." *Id.*

[18] We concluded that the evidence was sufficient to sustain the defendant's conviction. The State demonstrated that the defendant called the post office twice trying to locate the parcel. When it was delivered, he acknowledged that he was the addressee and that he had been waiting on the parcel. He immediately left with the unopened package. We concluded that there was "a reasonable inference Jernigan knew what the package contained." *Id.*

[19] According to Bradberry, this case is not like *Jernigan* because the parcel was not addressed to Bradberry, there was no evidence that he was anticipating its arrival, and the woman at the apartment could have been the one with

knowledge of the parcel's contents. We disagree with Bradberry's analysis. The State demonstrated that Bradberry retrieved the package after it was delivered and took it inside. A woman then left the apartment and drove to a nearby gas station, where she parked and looked around but did not get out of the vehicle. After ten to fifteen minutes, she drove back to the apartment. After she went back inside, Bradberry came outside and retrieved a blue Nike backpack from a vehicle. He then went back into the apartment. When the officers executed the search warrant, they found the unopened parcel hidden inside of the blue Nike backpack in the attic. The backpack also contained a boxed electronic scale and a roll of plastic wrapping. Underneath the backpack, officers found a handgun. The parcel's shipping label had been ripped off and was found in a trash can in the apartment. Officers also discovered an automated paper money counter and mail addressed to Bradberry at the apartment.

[20] After Bradberry was incarcerated, he made telephone calls from the jail that were recorded, including a call to his girlfriend, Nica. In one call, Bradberry told her, "I been telling you all week something wasn't right . . . Listen, but I just don't understand. When, when you left, Baby, you didn't see none of them?" State's Ex. 14(A). Nica replied that she had not seen the police. Bradberry then told her that she must not have been paying attention and said, "That's what I'm sayin' . . . That was my only reason, know what I'm saying'? Basically that you was my eyes, Baby. That was it. You was my eyes. That's what I was tellin' you." *Id.* In another call, Bradberry told Nica, "I told him

[the police officer], man, do not touch her. Bruh. Don't touch her. Leave her alone. She ain't got shit to do with this. All that's me, Bruh." *Id.*

[21] The evidence demonstrates that Bradberry was in possession of the parcel and the backpack and that the parcel was found hidden in the backpack in the attic of Bradberry's apartment. The parcel was found with other supplies commonly used for drug dealing and a handgun. In the telephone calls, Bradberry accused Nica of failing to pay attention because she did not notice the police outside. Bradberry also claimed to have told the police that she did not have anything to do with the cocaine and that it belonged to him. Although *Jernigan* is slightly different factually, we conclude that, as in *Jernigan*, the evidence is sufficient to demonstrate a reasonable inference that Bradberry knew what the parcel contained.

[22] Bradberry also argues that the State failed to demonstrate he knew the box contained cocaine weighing at least ten grams. We addressed this same argument in *Bookwalter v. State*, 22 N.E.3d 735, 741-42 (Ind. Ct. App. 2014), *trans. denied*. There, the defendant argued that the State had failed to prove that he "intended to deliver three or more grams of heroin." *Bookwalter*, 22 N.E.3d at 741. We held:

> The State was required to prove that Bookwalter possessed heroin with intent to deliver it. I.C. § 35-48-4-1(a). Enhancement of the offense to a Class A felony required that "the amount of the drug involved" weighed three or more grams. I.C. § 35-48-4-1(b)(1). The enhancement was specified in a separate subsection of the statute, and does not by its terms

require proof of intent to deliver a specific weight of drugs. Thus, the statute did not require that the State prove that Bookwalter intended to deliver a certain minimum amount of the drug to others. Rather, it required that Bookwalter possessed the drug, did so with intent to deliver some portion of the amount, and that the total amount possessed ("involved" in the offense) was greater than three grams.

*Id.* at 741-42. Because the State demonstrated that the defendant possessed nearly eighteen grams of heroin, we concluded that the evidence was sufficient to sustain his conviction for Class A felony dealing in a narcotic drug. Here, the State presented evidence that Bradberry possessed 713.44 grams of cocaine, many times more than the ten grams of cocaine necessary to qualify as a Level 5 felony. As in *Bookwalter*, the State was not required to prove that Bradberry intended to deliver a certain amount of the cocaine.

## Conclusion

[23] The trial court did not commit fundamental error in admitting State's Exhibit 5 and State's Exhibit 6. Further, the evidence is sufficient to sustain Bradberry's conviction. We affirm.

[24] Affirmed.

May, J., and Bradford, J., concur.