## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 14 2015, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Christopher B. Serak
Jacob Hammerle & Johnson
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Leona Rae Hawk,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 14, 2015

Court of Appeals Case No.
06A01-1411-MI-508

Appeal from the Boone Superior Court.

The Honorable Rebecca McClure, Judge.

Cause No. 06D02-1410-MI-131

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Leona Rae Hawk (Hawk), appeals the Order of the trial court holding her in indirect criminal contempt of court.

We affirm.

## ISSUES

Hawk raises two issues on appeal, which we restate as follows:

(1) Whether Hawk was deprived of due process amounting to fundamental error because the charging instrument failed to set forth an adequate description of the facts establishing contempt; and

(2) Whether the trial court's imposition of the maximum sanction for contempt is unreasonable.

## FACTS AND PROCEDURAL HISTORY

At approximately 3:00 a.m. on October 13, 2014, Whitestown Metropolitan Police Officer Ryan Batts (Officer Batts) observed a female—later identified as Hawk—driving a vehicle with a license plate that was obscured by a tinted cover. Officer Batts began following the vehicle at a close enough distance to read the license plate number. While waiting for the results of the license plate check, Officer Batts continued to follow Hawk and observed that she committed several additional traffic infractions. When he learned that the vehicle was registered to a man with a suspended driver's license, Officer Batts initiated a traffic stop.

[5] Officer Batts approached the vehicle and asked for Hawk's information, and he noticed that her speech was slurred and her movements were slow. Officer Batts ran a check on Hawk's driver's license, which was suspended indefinitely. Officer Jacob King (Officer King) arrived on the scene to assist and asked Hawk to exit her vehicle. As Hawk staggered to the rear of her vehicle, Officer Batts observed that her pupils were constricted, but Hawk denied that she had been drinking alcohol. At that point, Officer Batts arrested Hawk for driving while suspended and to further investigate a possible charge of operating while intoxicated.

[6] Officer Batts secured Hawk in handcuffs, and when he commenced a pat-down search, Hawk became agitated. She demanded proof that her license was suspended, argued that it was a civil rights violation to deny her request to have a female officer conduct the pat-down, and told Officer Batts that "she was gonna have [his] job." (Tr. p. 13). Officer Batts placed Hawk in the front seat of his vehicle. Hawk continued to demand proof that her driver's license was suspended, so Officer Batts displayed the information for her on his computer, but Hawk insisted that the results were inaccurate. En route to the jail, Hawk fell asleep in the squad car. Officer King, who had remained at the scene to wait for the tow truck, radioed to Officer Batts that the inventory search of Hawk's vehicle had yielded a glass pipe, three spoons, and several syringe caps.

[7] At the Boone County Jail, Officer Batts administered three field sobriety tests, of which Hawk passed one and failed two. A portable breathalyzer test indicated that Hawk had not consumed any alcohol. Based on Hawk's

unsteadiness, droopy eyelids, and staggering, Officer Batts determined that chemical tests were necessary to verify whether Hawk was under the influence of alcohol or a controlled substance. Officer Batts read Indiana's implied consent law to Hawk, which provides that when a police officer has probable cause to believe that a person has been operating while intoxicated, that person "impliedly consents" to "submit to each chemical test offered" by the officer "as a condition of operating a vehicle in Indiana." Ind. Code §§ 9-30-6-1; -2. Hawk stated that "she wasn't doing anything" until Officer Batts "proved that [her license] was suspended." (Tr. pp. 8-9). Interpreting her response as a refusal to voluntarily comply, Officer Batts applied for and, at 4:27 a.m., was granted a search warrant "to use reasonable force to obtain" a sample of Hawk's blood or other bodily fluid. (Appellant's App. p. 32).

[8] Officer Batts transported Hawk to the Witham-Anson emergency room in Zionsville, Indiana, explaining to her that he had a search warrant to procure blood and/or urine samples. When Hawk indicated that she would refuse, Officer Batts informed her that the procedure was not optional because it was ordered by a judge and that she could be held in contempt for refusing to submit. Hawk stated that "she didn't care what the [j]udge said, [and] she didn't care what the [w]arrant said." (Tr. p. 13). While waiting for the lab technician, Officer Batts read the search warrant to Hawk and allowed her to review it, but Hawk was belligerent—screaming that she wanted her attorney, Officer Batts' superior officer, a female police officer, and a doctor present because Officer Batts was violating her civil rights.

[9]     As the lab technician, Patricia Clinkenbeard (Technician Clinkenbeard), prepared her equipment, she asked Hawk to stop screaming in order to avoid scaring the children in the emergency room, but Hawk simply yelled, "I have rights[,]" and continued with her tirade. (Tr. p. 23). When Technician Clinkenbeard approached with her needle, Hawk pulled away and started bouncing around on the hospital bed. Officer Batts and Officer King attempted to restrain her, but Hawk squirmed, kicked, and screamed that she was being subjected to police brutality. Because of the officers' proximity to the struggling Hawk, Technician Clinkenbeard was concerned that the vein might spray and contaminate the officers. Realizing that it could not be safely accomplished, the officers decided to forego the blood draw. Officer Batts instructed Hawk to stand so they could leave, but Hawk refused. The officers removed her from the bed, and because Hawk refused to walk, they had to pull her out of the hospital. Hawk did not cease screaming until after she had been removed from the building.

[10]    On October 16, 2014, the State filed a petition for rule to show cause and an Information, charging Hawk with indirect criminal contempt of court based on her failure to comply with the search warrant. On October 30, 2014, the trial court conducted a hearing and, at the close of the evidence, issued its Order finding Hawk in indirect contempt of court. As a sanction, the trial court ordered Hawk to serve 180 days in the Boone County Jail.

[11]    Hawk now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Adequacy of Charging Instrument*

In this case, the trial court found Hawk to be in indirect criminal contempt of court for refusing to comply with the search warrant. Indirect contempt is the willful disobedience, resistance, or hindrance of any process or other lawfully issued order of a court. I.C. §§ 34-47-3-1; -2. "A criminal contempt can be any act which manifests a disrespect for and defiance of a court." *In re Perrello*, 291 N.E.2d 698, 700 (Ind. 1973). Hawk now claims that the finding of contempt should be reversed because the Information "does not describe the charge with the requisite specificity under prevailing law to apprise [her] of the nature of the prohibited conduct underlying the charge." (Appellant's Br. pp. 5-6).

At the outset, we note that Hawk relies on Indiana's criminal charging statute, which requires that a charging information "allege the commission of an offense by . . . setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition." I.C. § 35-34-1-2(a)(4). The purpose of a charging information is to protect a defendant's due process rights by providing him "with notice of the crime of which he is charged so that he is able to prepare a defense." *Ben-Yisrayl v. State*, 738 N.E.2d 253, 271 (Ind. 2000), *reh'g denied, cert. denied*, 534 U.S. 1164 (2002). However, it is well established that an action for contempt is a "*sui generis* proceeding neither civil nor criminal in nature, although both of those labels are used to describe certain categories of contempt" depending on "the nature and purpose of the sanction imposed." *Wilson v. State*, 988 N.E.2d 1211, 1218 (Ind. Ct. App. 2013)

(quoting *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind. 1990)). Accordingly, we look to Indiana Code chapter 34-47-3—which specifically governs all cases of indirect contempt—rather than the general criminal code.

[14] Indirect contempt involves actions that do not occur in the presence of the trial court; thus, an indirect contempt proceeding "requires an array of due process protections, including notice and an opportunity to be heard." *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 118 (Ind. Ct. App. 2009). These due process safeguards are codified at Indiana Code section 34-47-3-5(a), which stipulates that an individual charged with indirect contempt must "be served with a rule of the court against which the contempt was alleged to have been committed." In particular, the rule to show cause is required to

> (1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;
> (2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and
> (3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

I.C. § 34-47-3-5(b). Before the trial court may issue a rule to show cause, an information verified by oath or affirmation must be filed to apprise the court of "the facts alleged to constitute the contempt." I.C. § 34-47-3-5(d)(1).

[15] Hawk concedes that she did not move to dismiss or otherwise object to the adequacy of the rule to show cause or the Information, thereby waiving her claim for appeal. *See Holler v. State*, 106 N.E. 364, 364 (Ind. 1914) ("The proper

mode of testing an information for indirect contempt is by a motion to discharge the rule to show cause.").  Nevertheless, she contends that the Information "contains fundamental errors that have important implications on [her] basic constitutional rights."  (Appellant's Br. p. 5).

[16]  The fundamental error doctrine is a narrow exception to the waiver rule, under which our court may consider the merits of an otherwise forfeited claim if there are "blatant violations of basic principles, the harm or potential for harm is substantial, and the resulting error denied the defendant fundamental due process."  *Ben-Yisrayl*, 738 N.E.2d at 270.  "To qualify as fundamental error, 'an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.'"  *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007) (quoting *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002)).  On review, we are mindful of the fact that the fundamental error exception is only applicable in the most "egregious circumstances."  *Id.*  Simply arguing "that a constitutional right is implicated" is insufficient to invoke the fundamental error doctrine.  *Id.*

[17]  In the present case, the Information charged that

> on or about October 13, 2014 in Boone County, State of Indiana, Leona Rae Hawk did willfully disobey a Search Warrant Order issued under 06D02-1410-MC-543 by the Boone County Superior Court II under the authority of law, after it had been served upon her, contrary to the form of the statutes in such cases made and provided by [the Indiana Code] and against the peace and dignity of the State of Indiana.

(Appellant's App. p. 18). The State's petition for rule to show cause accompanied the Information and set forth the following factual details serving as the basis for contempt:

> Hawk informed Officer Batts that she didn't care what the [j]udge said and that Officer Batts wasn't touching her until she spoke to her attorney. Officer Batts informed [Hawk] that she would be held in contempt of court for refusing and she said she didn't care and that she wanted to speak to her attorney. Upon arriving at Witham Hospital-Anson and when [Technician Clinkenbeard] arrived in the room, [Hawk] continued to scream and yell and said we weren't taking her blood or anything else until she spoke to her attorney. [Technician] Clinkenbeard prepared the needle and tubes and [Officer King] and [Officer Batts] took Hawk['s] sweatshirt off down to her handcuffs and she continued to yell and scream. [Hawk] started to resist by pulling away and bouncing around on the hospital bed. [Officer King] and [Officer Batts] attempted to hold [Hawk] down to get a blood sample and she started kicking, kneeing, and screaming police brutality.

(Appellant's App. p. 20).[1]

Hawk argues that "[t]he charge of 'willful disobedience' . . . is . . . a 'generic term' that 'encompasses a large realm' of potentially prohibited conduct, and is inadequate to properly apprise her of the nature of the prohibited conduct charged." (Appellant's Br. p. 7) (quoting *Gebhard v. State*, 459 N.E.2d 58, 61 (Ind. Ct. App. 1984)). We disagree.

---

[1] Because the trial court's rule to show cause specifically references the State's petition for rule to show cause, we will consider the documents together to determine whether Hawk received adequate notice of the charge. *See Smith v. Ind. State Bd. of Health*, 303 N.E.2d 50, 58 (Ind. Ct. App. 1973), *reh'g denied*, *cert. denied*, 419 U.S. 836 (1974).

[19] First, we find that the Information tracks the "willful disobedience' language of the indirect contempt statute. I.C. § 34-47-3-2. The dictionary defines "willful" as "done deliberately" or "intentional," and the ordinary definition of "disobey" is "to not do what someone or something with authority tells you to do" or "to refuse or fail to obey rules, laws, etc." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary (last visited Mar. 31, 2015). Furthermore, our courts have long held that "[t]he acts constituting the criminal contempt 'must be characterized by a deliberate intent to defy the authority of the court.'" *Allison v. State ex rel. Allison*, 187 N.E.2d 565, 568 (Ind. 1963) (quoting *Denny v. State ex Inf. Brady*, 182 N.E. 313, 321 (Ind. 1932)). Thus, "the language is clear, explicit, and susceptible of but one meaning"—that is, that Hawk intentionally refused to comply with the search warrant. *Kilgallen v. State*, 132 N.E. 682, 686 (Ind. 1921), *reh'g overruled*.

[20] Second, the petition for rule to show cause sets forth a clear "statement of the facts constituting the contempt." *In re Perrello*, 291 N.E.2d at 701. Despite being informed of the consequences of non-compliance, Hawk repeatedly stated that she would not consent to a blood draw, and she specifically expressed her disrespect for the court's authority. When the officers attempted to use the "reasonable force" permitted by the warrant to obtain the samples, Hawk physically resisted—squirming, kicking, and screaming—making it unsafe for Technician Clinkenbeard to complete the draw. (Appellant's App. p. 32). Accordingly, we find that Hawk received "clear notice" of the facts alleged to

constitute the contempt. *In re Paternity of C.N.S.*, 901 N.E.2d 1102, 1105 (Ind. Ct. App. 2009).

[21] Nevertheless, although Hawk does not assert that she was unable to defend herself in the contempt action based upon the facts set forth in the petition for rule to show cause and the Information, she argues that she will be unable to defend herself against double jeopardy in any *future* prosecution arising from the same incident. Particularly, she avers that the Information does not specify "*which* aspects of her conduct" were relied upon to establish willful disobedience. (Appellant's Br. p. 7). According to Hawk, the risk that she will be "put in jeopardy for the same offense twice is not merely speculative but an imminent reality" because she "has in fact been charged with [r]esisting [l]aw [e]nforcement and [d]isorderly [c]onduct based on the same events of October 14, 2014 as formed the basis for the contempt action." (Appellant's Br. pp. 8-9).

[22] With the exception of Officer Batts' incident report, which lists six offenses supporting Hawk's arrest, we find nothing in the record establishing that she has officially been charged with resisting law enforcement, disorderly conduct, or any other offense.[2] There is no question that Hawk's sanction was intended to be punitive rather than remedial or coercive because the time for compliance

---

[2] Hawk explains that the charges of resisting law enforcement and disorderly conduct "are currently pending under Cause No. 06D02-1410-CM-542, which case is reference[d] in rhetorical paragraph 5 of the Petition for Rule to Show Cause Hearing filed in this contempt action." (Appellant's Br. p. 6). We note that "rhetorical paragraph 5" specifically refers to Officer Batts' affidavit for probable cause, which does not include any information about specific charges or the status of the case. (Appellant's Br. p. 6).

with the search warrant had long lapsed. *See D.W. v. State*, 673 N.E.2d 509, 511-12 (Ind. Ct. App. 1996), *trans. denied*. As such, the contempt sanction may very well constitute "the first jeopardy" for purposes of a double jeopardy analysis in the event that other charges have been or will be filed. *Hunter v. State*, 802 N.E.2d 480, 483 (Ind. Ct. App. 2004), *trans. denied*. However, whether any subsequent prosecution would actually violate the rule against double jeopardy would depend upon the statutory elements of the charged offenses and the factual bases upon which those new charges are predicated. *Ellis v. State*, 634 N.E.2d 771, 773 (Ind. Ct. App. 1994). We have already determined that Hawk was made aware of the facts giving rise to the charge of contempt. Absent any information of additional charges that rely on the same facts, we decline to engage in a purely speculative double jeopardy analysis. If and when Hawk's double jeopardy rights are implicated, it will be up to her to make the relevant objections before the trial court. In this regard, we conclude that the rule to show cause and the Information for contempt satisfied the due process requirements of Indiana Code section 34-47-3-5(b), and we therefore find no error, let alone fundamental error.

## II. *Reasonableness of Sanction*

[23] Hawk claims that the trial court's imposition of a 180-day jail sentence is an inappropriate sanction. In general, a punishment for contempt is a matter reserved to the sound discretion of the trial court. *Hopping v. State*, 637 N.E.2d 1294, 1298 (Ind.), *cert. denied*, 513 U.S. 1017 (1994). The trial court's power to punish contempt is limited only by reasonableness. *Jones v. State*, 847 N.E.2d

190, 202 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied*. However, a trial court may impose a maximum sentence of six months "for criminal contempt[] without guilt or innocence being determined by a jury." *Holly v. State*, 681 N.E.2d 1176, 1177 (Ind. Ct. App. 1997).

[24] Here, Hawk received the maximum sanction permitted in the absence of a jury trial. In determining a proper sanction, the trial court explained to Hawk that it "heard testimony today that has convinced the [c]ourt that you took actions clearly calculated to prevent hospital personnel from drawing your blood." (Tr. p. 41). Moreover, the trial court found Hawk to be "the most resistant of any person [that it has] heard testimony about in a [c]ourt on a[n] indirect contempt hearing." (Tr. p. 44).

[25] "[A] criminal contempt sanction is punitive in nature because its purpose is to vindicate the authority of the court." *Jones*, 847 N.E.2d at 199. In addition, a punishment for criminal contempt is meant to "act as a deterrent for [the defendant] and all others who might harbor the thought of defying an order of [the court]." *In re Perrello*, 291 N.E.2d at 701. We find that Hawk's 180-day sentence effectuates both of these purposes. Hawk unequivocally announced her disregard for the authority of the court and proceeded to verbally and physically resist all efforts to execute the mandate of the search warrant. By her actions, Hawk put herself, the officers, and Technician Clinkenbeard at risk of injury or blood contamination. Moreover, by screaming, kicking, and flailing, Hawk successfully thwarted the blood draw, thereby preventing Officer Batts from collecting the necessary evidence to support a charge of operating while

intoxicated. It would undermine the authority of all courts and render search warrants meaningless if an individual subject to a warrant could forcibly resist without fear of reprisal. As our supreme court has stated, "Open defiance of the orders of [a court] will not be countenanced." *Id.* Accordingly, we find that Hawk's sentence is reasonable in light of the given circumstances.

## CONCLUSION

Based on the foregoing, we conclude that Hawk was provided with adequate notice of the charge against her, and the trial court imposed a reasonable sanction of incarceration for 180 days.

Affirmed.

Bailey, J. and Barnes, J. concur