## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 02 2020, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Craig Lenahan,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 2, 2020

Court of Appeals Case No.
19A-CR-1504

Appeal from the Brown Circuit Court

The Honorable Mary Wertz, Judge

Trial Court Cause No.
07C01-1806-F6-266

**Bailey, Judge.**

# Case Summary

[1] Craig Lenahan ("Lenahan") appeals his conviction, following a jury trial, for possession of methamphetamine, as a Level 6 felony.[1] We affirm.

# Issues

[2] Lenahan raises the following three restated issues:

1. Whether the trial court fundamentally erred in its instruction to the jury on constructive possession.

2. Whether decisions of his trial counsel violated his fundamental right to a fair trial.

3. Whether the State presented sufficient evidence to support his conviction.

# Facts and Procedural History

[3] At approximately 4:45 in the morning on June 15, 2018, Brown County Sheriffs' Deputies Colton Magner ("Dep. Magner") and Andrew Eggebrecht ("Dep. Eggebrecht") were parked on the side of State Road 46 across from the west gate entrance to Brown County State Park. The deputies' vehicles were facing the road and their headlights were on. They were watching light traffic pass by when they observed a mid-2000s silver four-door vehicle drive by at a

---

[1] Ind. Code § 35-48-4-6.1(a).

slower than normal speed, heading eastbound toward Nashville, Indiana. The driver of the vehicle was a bald white male. The deputies observed him duck behind the pillar dividing the front and rear doors as he passed by them; they both believed the driver ducked in that manner in order to conceal his face from them. The deputies did not observe any other occupants in the vehicle at the time.

[4]     Dep. Magner turned east on State Road 46 to follow the vehicle, while Dep. Eggebrecht remained at the west gate location to finish some paperwork on an unrelated matter. After trailing the silver vehicle for half of a mile, Dep. Magner observed it turn into the Abbey Inn. Dep. Magner passed the Abbey Inn, continued east towards Nashville, and parked near Green Valley Church Road. Meanwhile, Dep. Eggebrecht left the west gate entrance and observed the silver vehicle exit the Abbey Inn and continue east on State Road 46. Moments later, Dep. Magner observed the same silver vehicle driven by the bald white male slowly pass by him at his new location at the intersection of Green Valley Church Road and State Road 46. The vehicle's brake lights activated as it passed Dep. Magner on a level stretch of road.

[5]     Both deputies followed the silver vehicle into Nashville and observed the vehicle pull into a Speedway gas station. Dep. Eggebrecht passed the gas station and parked in a high school parking lot where he could observe the gas station. Dep. Magner continued further east on State Road 46. From the high school parking lot, Dep. Eggebrecht observed the driver park the silver vehicle with the driver's side closest to a gas pump. A bald white male wearing a black

shirt and black shorts exited the driver's side of the vehicle and entered the gas station. A few minutes later, the same male returned to the silver vehicle, moved it to a different gas pump, and parked it so that the gas pump was closest to the passenger's side. The man "look[ed] around over his shoulder" "constantly" as he pumped the gas; his "vigilance" caught Dep. Eggebrecht's attention. Tr. Vol. III at 21-22. Dep. Eggebrecht also observed the man "rather aggressively" wash the windshield of the vehicle. *Id*. at 21. The man then reentered the vehicle and pulled away with the gas pump handle still inside the vehicle's gas tank. The pump handle detached from the vehicle and dropped to the ground. The man then stopped and exited the vehicle, replaced the pump handle into the gas pump, got back in the vehicle, and drove away onto State Road 46 heading east.

[6] Dep. Eggebrecht lost sight of the vehicle but observed it a few minutes later at the Brown County Inn. Dep. Eggebrecht continued down the road but returned to the Brown County Inn three or four minutes later and observed the silhouette of a man still sitting in the silver vehicle. Dep. Eggebrecht decided to talk to the driver so he pulled into the Inn. When he reached the silver vehicle, the man was no longer inside, but a woman who appeared to be unconscious was in the back seat on the passenger-side leaning against some baggage. At that time, Dep. Magner arrived and both deputies knocked on the window of the vehicle to check on the female passenger's welfare. After several knocks, the female woke up, exited the vehicle, and spoke with the deputies. The female, later identified as Asia, indicated that she did not know what geographic state she

was in.  She explained that she had been asleep for an extended period of time and the last place she remembered being in was the southeast corner of Missouri.  Officer Keith Lawson ("Officer Lawson") from the Nashville Police Department arrived and stayed with Asia while the two deputies looked for the driver of the vehicle.  Asia did not reenter the silver vehicle.

[7] Deputies Magner and Eggebrecht searched the area and spotted the driver, later identified as Lenahan, walking behind the Inn near the pool area in the dark. As Dep. Magner approached Lenahan, Officer Lawson advised over the radio that he observed a glass pipe consistent with methamphetamine use on the driver's seat of the silver vehicle.  Dep. Magner arrested Lenahan and walked him back to the silver vehicle.  Lenahan told Dep. Magner that most law enforcement would just smash the pipe and it would be forgotten.  Lenahan also told Dep. Magner that he had been walking around the back of Brown County Inn because he was "looking for a possible large wedding venue."  Tr. Vol. II at 196-97.

[8] Dep. Eggebrecht applied for a search warrant for the vehicle while Dep. Magner took Lenahan to jail.  Dep. Magner returned to where the silver vehicle remained parked at the Brown County Inn, and he placed Asia in the back of his police vehicle.  During the deputies' subsequent search of the vehicle pursuant to a warrant they found:  a glass pipe and screwdriver on the driver's seat; a bag of 4.19 grams of methamphetamine in the pocket of the driver's door; a Minnesota license plate that had been reported stolen; and a lighter in the center console.  Police also observed puncture marks on Asia's arm and

found several syringes with methamphetamine residue inside a backpack comingled with her belongings.

[9] On June 15, 2018, the State charged Lenahan with possession of methamphetamine, as a Level 6 felony; conversion of the license plate, as a Class A misdemeanor;[2] and possession of paraphernalia, as a Class C misdemeanor.[3] At the conclusion of the two-day trial on May 23, 2019, the jury found Lenahan guilty of Level 6 felony possession of methamphetamine, but not guilty of the remaining charges. The court sentenced Lenahan to two years executed in the Brown County Jail, and this appeal ensued.

[10] We will provide additional facts as necessary.

# Discussion and Decision

## Jury Instruction on Constructive Possession

[11] Lenahan contends that the trial court erred in its final Jury Instruction No. 15, which stated:

> In order to prove constructive possession, the State must show that the defendant has both (1) the intent and (2) the capability to maintain dominion and control over the contraband. The State must demonstrate the defendant's knowledge of the presence of the contraband to prove the intent element. If the control is non-

---

[2] I.C. § 35-43-4-3(a).

[3] I.C. § 35-48-4-8.3(b)(1).

exclusive, the State may prove knowledge from evidence of additional circumstances pointing to the [d]efendant's knowledge.

Additional circumstances have been shown by various means, including (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) location of substances like drugs in settings that suggest manufacturing; (4) proximity of the contraband to the defendant; (5) location of the contraband within the defendant's plain view; and (6) the mingling of the contraband with other items owned by the defendant. This list is non-exhaustive as other circumstances could reasonably demonstrate requisite knowledge.

App. at 99.

[12] We review a trial court's decision to tender or reject a jury instruction for an abuse of discretion.

Under this standard, we look to whether evidence presented at trial supports the instruction and to whether its substance is covered by other instructions. [*Kane v. State*, 976 N.E.2d 1228, 1230-31 (Ind. 2012).] When the appellant challenges the instruction as an incorrect statement of law, we apply a de novo standard of review. *Id.* at 1231. We reverse the trial court only if the instruction resulted in prejudice to the defendant's "substantial rights." *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015).

*Batchelor v. State*, 119 N.E.3d 550, 554 (Ind. 2019). In reviewing a trial court's decision to give or refuse tendered jury instructions, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of

the tendered instruction is covered by other instructions which are given. *Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind. 2002).

[13]     Where the defendant failed to object to the jury instruction, the objection is waived and reversal is warranted only where there was fundamental error. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). However, where—as was the case here—the defendant affirmatively agreed to the jury instruction, he invited the error and the fundamental error analysis is not available to him. *Batchelor*, 119 N.E.3d at 558 (quoting *Brewington v. State*, 7 N.E.3d 946, 954 (Ind. 2014)) (clarifying that invited error is not just a "passive lack of objection" but "affirmative actions [taken] as part of a deliberate, 'well-informed' trial strategy"); *Darden v. State*, 99 N.E.3d 645, 651 (Ind. 2018) (internal quotation and citation omitted) (noting the doctrine of invited error is based on the legal principle of estoppel and "forbids a party from taking advantage of an error that she commits [or] invites…"). Lenahan's counsel affirmatively agreed to instruction 15 in its final version. Tr. Vol. III at 187-88 (Defense counsel stating to the court, regarding final instruction 15, "It looks good."). Therefore, Lenahan cannot now claim that instruction was fundamental error.

[14]     In any event, Lenahan has not met his burden to show any error, let alone fundamental error, in final jury instruction number 15. Lenahan incorrectly maintains that the instruction does not include the requirement that he had knowledge of the presence of the illegal substance. *See Armour v. State*, 762 N.E.2d 208, 216 (Ind. Ct. App. 2002) (noting, to prove constructive possession of a drug, the State must show the defendant had knowledge of its presence to

prove the intent element), *trans. denied*. However, the instruction clearly does include such language. App. at 99 ("The State must demonstrate the defendant's knowledge of the presence of the contraband to prove the intent element.").

[15] Lenahan also mistakenly asserts that the second paragraph of instruction number 15—giving examples of "additional circumstances" that may prove the defendant's knowledge of the contraband when control over it was non-exclusive—was erroneous. While he acknowledges that the examples come from Supreme Court case law, *Gray v. State*, 957 N.E.2d 171 (Ind. 2011) (citing *Gee v. State*, 810 N.E.2d 338 (Ind. 2004)), he notes that the mere fact that language previously was used in an opinion of the appellate courts does not make it proper language for instructions to a jury. Appellant's Br. at 17 (quoting *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003)). However, there is also "no blanket prohibition against the use of appellate decision language in jury instructions." *Gravens v. State*, 836 N.E.2d 490, 494 (Ind. Ct. App. 2005), *trans. denied*. Thus, the fact that the language in the second paragraph of the instruction comes from Indiana caselaw does not alone make the instruction inappropriate.

[16] But Lenahan contends that the second paragraph of the instruction "relieved the State of having to prove beyond a reasonable doubt that Lenahan had actual knowledge of the presence" of the illegal substance. Appellant's Br. at 18-19. Lenahan does not explain this argument any further; to the extent we can follow it, his argument seems to challenge the well-established holding that

constructive possession may be shown with evidence of additional circumstances such as the examples listed in *Gee* and cited with approval in *Gray*. However, Lenahan presents no cogent argument as to why that binding Supreme Court precedent is erroneous; therefore, we address that apparent assertion no further. *See* Ind. Appellate Rule 46.

[17] Lenahan also maintains that the second paragraph of the instruction "invaded the province of the jury to determine the law and facts" and "misled the jury" by "inappropriately emphasizing certain facts." Appellant's Br. at 18, 19. That is incorrect. Rather, the instruction includes the entire list of examples—even those inapplicable to Lenahan—as stated by Supreme Court precedent. Moreover, the instruction accurately states that the list of examples is "non-exhaustive as other circumstances could reasonably demonstrate the requisite knowledge." App. Vol. II at 99.

[18] The trial court did not abuse its discretion when it tendered final jury instruction number 15.

## Fundamental Right to Fair Trial

[19] Lenahan asserts that he was denied his fundamental right to a fair trial when his counsel:[4] (1) agreed to final jury instruction number 15; (2) introduced video

---

[4] Lenahan specifically asserts that he is not raising an ineffective assistance of counsel claim in this direct appeal, only a fundamental error claim. While application of the two doctrines "may frequently lead to the same result, the analyses are different." *Benefield v. State*, 945 N.E.2d 791, 803 (Ind. Ct. App. 2011). And a defendant may raise a claim on direct appeal that his trial counsel's representation constituted fundamental error. *Id.*; *see also Jewell v. State*, 877 N.E.2d 864, 942 (Ind. 2007).

and photographic evidence that allegedly prejudiced his defense; (3) failed to object to certain evidence, and (4) was ineffective in his cross-examination of Dep. Eggebrecht. An error to which there was no objection is fundamental, and thus reviewable on appeal, if it made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018).

[20] Where fundamental error analysis is applicable, it operates as

> an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). This exception, however, is "extremely narrow" and encompasses only errors so blatant that the trial judge should have acted independently to correct the situation. *Id*. At the same time, "if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error." *Brewington*[ *v. State*], 7 N.E.3d [946,] 974 [(Ind. 2014)].

*Id*.

[21] As our Supreme Court explained in *Brewington v. State*, principles of fundamental error and ineffective assistance of counsel may overlap in that

> [a]n error blatant enough to require a judge to take action *sua sponte* is necessarily blatant enough to draw any competent attorney's objection. But the reverse is also true: if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error. And when a passive lack of objection … is

> coupled with counsel's active requests …, it becomes a question
> of invited error.

*Brewington*, 7 N.E.3d at 974. In other words, where trial counsel's action or inaction was an oversight, fundamental error analysis may apply. *Id.* at 975. However, where the alleged error was a strategic decision on the part of trial counsel, even if unsuccessful, it is invited error and not reviewable. *Id.* ("At bottom, then, fundamental error gives us leeway to mitigate the consequences of counsel's oversights, but invited error precludes relief from counsel's strategic decisions gone awry.").

[22] Lenahan's claims regarding his counsel's agreement to jury instruction 15 and his counsel's alleged error in introducing certain video and photographic evidence[5] both involve invited error and, as such, those contentions are not subject to fundamental error analysis. *E.g.*, *Brewington*, 7 N.E.3d at 974-75. Those decisions of Lenahan's trial counsel were not the result of counsel's oversight but rather they involved strategic, though ultimately unsuccessful, decisions to present jury instructions and evidence that might show reasonable doubt that Lenahan possessed the items found in the vehicle. *See* Tr. Vol. III at 202-03, 205 (Defense counsel arguing that the video and photographs show movement by someone other than defendant in the vehicle in order to cast

---

[5] Specifically, Lenahan refers to video footage from the Speedway gas station that indicated Asia was moving around in the vehicle while Lenahan was in the gas station, Def's Ex. B, Ex. at 26, and still photos of Lenahan outside the vehicle at the Speedway, Def.'s Ex.s C and D, Ex. at 27, 28.

doubt on contention that Lenahan knew of the presence of the contraband and that there was constructive possession). Those invited alleged errors are not reviewable.

[23] And counsel's alleged errors in failing to object to certain evidence were not such blatant errors that they violated Lenahan's fundamental right to a fair trial. *Brewington*, 7 N.E.3d at 974. Trial counsel's failure to object to evidence regarding paraphernalia, even if erroneous, was harmless, as Lenahan was found not guilty of the possession of paraphernalia charge. And the trial court could have recognized a viable reason why defense counsel failed to object to evidence regarding the puncture marks on Asia's arm; i.e., such evidence tended to show Asia's possession and use of drugs and, thus, cast some doubt on the contention that Lenahan was the one who possessed the illegal substance.

[24] Finally, Lenahan fails to explain how his counsel's failure to cross examine Dep. Eggebrecht about discrepancies between his testimony and the probable cause and search warrant affidavits caused prejudice to him. He contends that Dep. Eggebrecht testified that he approached the parked vehicle at the Brown County Inn but that his probable cause affidavit states that he "stopped" Lenahan at the Brown County Inn. And he notes that Dep. Eggebrecht testified that, when he pulled into the Brown County Inn parking lot and walked to the car, that was when he first noticed that no one was inside the vehicle other than Asia, but his affidavit for a search warrant stated that Lenahan "exited and left the area on foot" as the deputy pulled into the parking

lot. App. at 15. However, we fail to see how those minor discrepancies caused any harm to Lenahan, much less fundamental error, and Lenahan does not provide any explanation as to how he was harmed. *See Jewell*, 887 N.E.2d at 942 (noting failure to cross examine a witness regarding inconsistencies did not "satisfy the narrow criteria warranting … consideration [of that alleged error] under the fundamental error exception to procedural default").

[25] To the extent Lenahan raises defense counsel errors that were not invited and are therefore subject to the fundamental error analysis, those alleged errors did not violate his fundamental right to a fair trial.

## Sufficiency of the Evidence

[26] Lenahan challenges the sufficiency of the evidence to support his conviction for possession of methamphetamine, as a Level 6 felony. Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*.

Moreover, "[a] conviction may be based on circumstantial evidence alone so

long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

[27] To support Lenahan's conviction, the State was required to prove that he knowingly or intentionally possessed methamphetamine. I.C. § 35-48-4-6.1(a). A person actually possesses contraband when he or she has direct physical control over it. *Gray v. State*, 957 N.E.2d at 174. "When the State cannot show actual possession, a conviction for possessing contraband may rest instead on proof of constructive possession." *Id.* A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item, and (2) the intent to maintain dominion and control over it. *Id.* The capability element may be inferred "from the simple fact that the defendant had a possessory interest in the premises" where the contraband was found, regardless of whether the possessory interest is exclusive. *Id.* "To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband," and such knowledge may be inferred from either defendant's exclusive dominion and control over the premises containing the contraband, or from evidence of "additional circumstances" indicating the defendant's knowledge of the presence of the contraband. *Id.* at 174-75. Those additional circumstances can include:

> (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of

> contraband within the defendant's plain view; and (6) the
> mingling of contraband with other items the defendant owns.

*Id.* at 175 (citing *Gee*, 810 N.E.2d at 341).

[28]    Here, the jury could reasonably infer from the evidence that Lenahan had constructive possession of the methamphetamine found in the pocket of the driver's side door. The bag of drugs was found in close proximity to where Lenahan had been—i.e., the driver's seat. And the only other occupant of the vehicle was sleeping in the passenger's side of the backseat of the vehicle, making it reasonable to infer that Lenahan was in the best position to exert control over the bag of drugs. There was also evidence that Lenahan attempted to hide and/or made furtive gestures; the deputies testified that, as Lenahan passed by them on the road, he appeared to be hiding his face behind the pillar in between the front and back doors of the vehicle. All of that evidence is more than a "mere scintilla," as Lenahan maintains. Appellant's Br. at 24-25. It is sufficient evidence to support his conviction of possession of methamphetamine.

# Conclusion

[29]    The trial court did not commit fundamental error when it tendered jury instruction number 15. To the extent Lenahan raises defense counsel errors that were not invited and are therefore subject to fundamental error analysis, those alleged errors did not violate his fundamental right to a fair trial. And there was sufficient evidence to support his conviction.

Affirmed.

Crone, J., and Altice, J., concur.